UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

CHARLES FRANCIS BOYD,

    Plaintiff,

v.

CITY OF WARREN,
WARREN POLICE DEPARTMENT,
WARREN CITY HALL,
JERE GREEN,
COLIN MCCABE,
JEFFREY MASSERANG, JR.,
ROBERT HORLOCKER, and
ROLAND BELL,

    Defendants.

Case No. 16-cv-12741
Honorable Laurie J. Michelson
Magistrate Judge R. Steven Whalen

## OPINION AND ORDER
## ADOPTING IN PART REPORT AND RECOMMENDATION [23] AND
## GRANTING IN PART DEFENDANTS' MOTION TO DISMISS [15]

Charles Boyd says that in May 2014, he was in a parked car with some of his friends when two City of Warren police officers, Colin McCabe and Jeffrey Masserang, approached under the pretense that one of the occupants was visibly sick. After he exited the vehicle, Boyd says that McCabe attempted to strike or grab his head which caused him to fall into the backseat of the car. McCabe proceeded to beat and choke him. Boyd was taken to the police station in Warren. There, several officers, including McCabe and Masserang, allegedly forced Boyd to clean up his vomit with a single paper towel. Boyd further claims that during booking, one officer choked him (while another watched), one slammed his head, and one threw him into a cell by his hair. Based on these allegations, Boyd sued McCabe, Masserang, the City of Warren, and others.

Defendants move to dismiss Boyd's lawsuit. (R. 15.) Magistrate Judge R. Steven Whalen, to whom all pretrial matters have been referred, recommends that this Court dismiss some of Boyd's claims but that the case proceed on others. (R. 23, PID 383.) Boyd has no objections to this, but Defendants have one. In particular, the City of Warren disagrees with the Magistrate Judge's finding that Boyd adequately pled a municipal-liability claim. (R. 24.)

Because the City has objected, the Court reviews anew the City's argument that Boyd's complaint fails to allege a viable municipal-liability claim. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(3). Thus, the question for this Court is whether Boyd's claim against the City of Warren is "plausible," i.e., whether the factual allegations of Boyd's complaint permit "the reasonable inference" that the City is liable. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

Boyd says that the answer is "yes." (*See* R. 25, PID 509.) In particular, he argues that his allegations make it plausible that the City either (1) has a policy of inadequately training or supervising its officers or (2) has "a custom of tolerance or acquiescence of federal rights violations," *Burgess v. Fischer*, 735 F.3d 462, 478 (6th Cir. 2013). (*See* R. 25, PID 509.)

Both these theories of municipal liability require a plaintiff to show—or, at this stage of the case, show that it is plausible—that the City of Warren acted with "deliberate indifference." *See Connick v. Thompson*, 563 U.S. 51, 61 (2011); *Stanfield v. City of Lima*, No. 17-3305, 2018 WL 1341646, at *8 (6th Cir. Mar. 15, 2018); *Marcilis v. Twp. of Redford*, 693 F.3d 589, 605 (6th Cir. 2012.) Deliberate indifference is a "stringent standard of fault," *Connick*, 563 U.S. at 61; it "does not mean a collection of sloppy, or even reckless oversights," *Thomas v. City of Chattanooga*, 398 F.3d 426, 433 (6th Cir. 2005). "[O]rdinarily" (more on this qualifier below) deliberate indifference means that the municipality knew or should have known of "[a] pattern of similar constitutional violations" and took no remedial measures. *See Connick*, 563 U.S. at 61.

The allegations of Boyd's complaint do not make it plausible that the City of Warren knew or should have known of repeat excessive-force violations by its police officers.

The Court starts, as *Iqbal* directs, by identifying allegations "that, because they are no more than conclusions, are not entitled to the assumption of truth." 556 U.S. at 679. That means, for purposes of assessing plausibility, the Court need not credit allegations like this: the City of Warren "acted recklessly and/or with deliberate indifference when it practiced and/or permitted customs and/or policies and/or practices that resulted in constitutional violations to Plaintiff." (R. 11, PID 147.) Or this: the City "failed to adequately train [its officers, including McCabe, Masserang, Horlocker,] with regard to reasonable seizures." (*Id.*) Or this: the City "exhibited a deliberate indifference as to whether or not members of the public, such as Plaintiff, would be hurt by its/their failure to properly train or supervise Defendants." (R. 11, PID 149.) Whether the City acted with "deliberate indifference," "failed to adequately train," or "exhibited a deliberate indifference," are legal conclusions.

Another set of allegations, while narrowly escaping the legal-conclusion label, do little to "nudge[]" Boyd's municipal-liability claim "across the line from conceivable to plausible." *Iqbal*, 556 U.S. at 680. In this set, are allegations like these two: the City failed to terminate or discipline its officers, including Defendants, "after it was clear that such officers had histories of violating the rights of citizens" (R. 11, PID 147) and "[g]iven the prior accounts of constitutional violations against [the City] . . . [it was] clearly on notice that such abuse . . . would likely occur in the future if [it] . . . continued to fail to properly hire, train, or supervise its police officers, which it did fail to do." (R. 11, PID 149.) Unlike pure legal conclusions, these allegations at least contain a shred of factual matter: whether Warren police officers, including Defendants, had "histories of violating the rights of citizens" and whether there were "prior accounts of

3

constitutional violations" are questions that have an objectively true or false answer. But the standard is still plausibility, and without saying more about these "histories" and "prior accounts"—what happened and when—these allegations are too vague to show that there was a "pattern" of constitutional violations and that the constitutional violations were "similar," *see Connick*, 563 U.S. at 61.

That leaves the portions of Boyd's complaint where he does specify what happened and when. Boyd avers that in November 2013, "a potential rape victim was abused by the Warren Police Department by having her hair ripped or cut off by officers while restrained in a chair and while in the presence of other officers who either took part in it or watched." (R. 11, PID 150.) And Boyd's complaint states that in January 2014, the "Warren Police Department improperly assaulted a man named Torres at his home and falsified reports (including falsely stating that Torres resisted his arrest) [and] [a]t least one officer was thereafter charged with [a]ssault." (R. 11, PID 150.) Boyd also alleges that "Defendant Officer McCabe has already been sued in this Federal District Court in the matter of *Laskey v. City of Warren, Kimberley Teolis and Colin McCabe* (2:13-CV-14538)" and that the case also involves claims of excessive force. (R. 11, PID 150–51.)

Although these allegations are undoubtedly factual, they still do not make it plausible that the City of Warren knew or should of known that there was "[a] pattern of similar constitutional violations," *Connick*, 563 U.S. at 61. As an initial matter, these three incidents do not seem all that similar. And even assuming it is enough that they all fall under the broad umbrella of "excessive force," three does not a pattern make. Given that there are about 135,000 people in Warren, *see* U.S. Census Bureau, https://factfinder.census.gov/faces/nav/jsf/pages/index.xhtml (last visited Apr. 18, 2018), the City's police force likely engages in hundreds of arrests and

4

bookings each year. As such, one instance of excessive force in 2011 (Laskey), one in 2013 (the hair ripping), and one in 2014 (Torres), does not make it plausible that the City knew or should have known of a pattern of excessive force. *See Ellis ex rel. Pendergrass v. Cleveland Mun. Sch. Dist.*, 455 F.3d 690, 701 (6th Cir. 2006) (finding that two prior incidents over a two-year period did not establish a pattern for purposes of municipal liability).[1]

In his complaint, Boyd promised additional examples of misconduct by Warren police officers. He alleged that there are a "plethora" of examples (R. 11, PID 137), that the "instances [were] too many to include in [the] Complaint" (R. 11, PID 150), and that examples were "aplenty" and would be "further explored in Discovery" (R. 11, PID 151). Presumably Boyd had particular instances in mind when he pled this. Yet in response to Defendants' motion to dismiss and in response to Defendants' objections, Boyd has not come up with any examples other than the three just discussed.

Thus, Boyd's complaint does not make it plausible that the City knew or should have known of a pattern of federal-rights violations.

Remaining is the issue of the qualifier—that showing deliberate indifference "ordinarily" requires showing a known or obvious pattern of misconduct. "[T]he [Supreme] Court [has] left open the possibility that, 'in a narrow range of circumstances,' a pattern of similar violations might not be necessary to show deliberate indifference." *Connick*, 563 U.S. at 63. In particular, "the need for more or different training [may be] so obvious, and the inadequacy so likely to result in the violation of constitutional rights, that the policymakers of the city can reasonably be

---

[1] A search of the Eastern District of Michigan's case-management system suggests that the officers involved in the Laskey and Torres incidents were not adjudged liable. In *Laskey*, the defendants, including McCabe, were granted summary judgment. *See Laskey v. City of Warren*, No. 13-14538 (E.D. Mich. Sept. 25, 2015) (order granting summary judgment). And *Torres* agreed to dismiss his case. *Torres v. Gill*, No. 14-11414 (E.D. Mich. Feb. 11, 2015) (stipulated order of dismissal); *see also Repp v. Gill*, 14-13609 (E.D. Mich. filed Sept. 17, 2014).

said to have been deliberately indifferent to the need." *City of Canton, Ohio v. Harris*, 489 U.S. 378, 390 (1989). For example, if a city were to arm its police officers without training on the constitutional limits of deadly force, the city might be deliberately indifferent given the known frequency in which police would encounter fleeing felons. *Id.* at 390 n.10; *see also Connick*, 563 U.S. at 63 (discussing *Canton*'s hypothetical).

It appears that Boyd is attempting to allege that this case falls within the "narrow range of circumstances" contemplated in *Canton*. His complaint says, "As another method of demonstrating deliberate indifference by [the City], Plaintiff can establish that Defendants have failed to train their employees to handle recurring situations." (R. 11, PID 151.) Boyd adds, "[e]very day, [City of Warren officers] arrest individuals and then transport them to the Warren Jail for booking and holding." (R. 11, PID 151.)

But Boyd has not adequately pled that the City is liable under the "possibility of single-incident liability that the Court left open in *Canton*." *Connick*, 563 U.S. at 68. For one, Boyd has not alleged that Defendants, or Warren police officers generally, received *no* training on what is constitutionally proper force during arrest or booking. *See id.* at 67 (providing that "[t]he *Canton* hypothetical assumes that the armed police officers have no knowledge at all of the constitutional limits on the use of deadly force" and explaining that "the utter lack of an ability to cope with constitutional situations . . . underlies the *Canton* hypothetical"). Moreover, Boyd's examples of misconduct and conclusory statements about inadequate training do not make it plausible to infer that it was "so obvious" to the City that its officers needed more training on the use of force during arrests and bookings and that absent more training it was "so likely" that its officers would violate the constitutional rights of its residents. *See Canton*, 489 U.S. at 390.

In sum, the allegations of Boyd's complaint do not contain sufficient "factual content" for this Court to "reasonabl[y] infer[] that the [City] is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. Count VI of Boyd's complaint will be dismissed.

That resolves the sole objection to the Magistrate Judge's report. As for the remainder of his report and the rest of his recommendations, neither party has complained about those. As such, the parties have forfeited any right to have this Court review anything other than the City's argument that Boyd has not pled a municipal-liability claim. *See Thomas v. Arn*, 474 U.S. 140, 144 (1985); *United States v. Walters*, 638 F.2d 947, 949–50 (6th Cir. 1981); *Garrison v. Equifax Info. Servs., LLC*, No. 10-13990, 2012 WL 1278044, at *8 (E.D. Mich. Apr. 16, 2012).

Accordingly, the Court ACCEPTS IN PART the Magistrate Judge's recommendation (R. 23, PID 404) and GRANTS IN PART and DENIES IN PART Defendants' motion to dismiss (R. 15). In particular, the Court ORDERS as follows:

(1) Count III, Boyd's gross-negligence claim, is DISMISSED;

(2) Count IV, Boyd's assault-and-battery claim, is DISMISSED only insofar as the claim is against Robert Horlocker;

(3) Count V, Boyd's intentional-infliction-of-emotional-distress claim, is DISMISSED only insofar as the claim is against Horlocker; and

(4) Count VI, Boyd's municipal-liability claim, is DISMISSED and Defendants City of Warren and Warren Police Department are DISMISSED from this case.

All other claims remain in this case.

    SO ORDERED.

                                        s/Laurie J. Michelson
                                        LAURIE J. MICHELSON
Dated: April 18, 2018              U.S. DISTRICT JUDGE

## **CERTIFICATE OF SERVICE**

    The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on April 18, 2018.

                                        s/Keisha Jackson
                                        Case Manager