UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

CHARLES FRANCIS BOYD,

         Plaintiff,                   Case No.  16-12741

v.                                District Judge Laurie J. Michelson
                                Magistrate Judge R. Steven Whalen

CITY OF WARREN, A Municipal corporation*;*
WARREN POLICE DEPARTMENT; OFFICER
COLIN MCCABE, OFFICER JEFFREY
MASSERANG; OFFICER ROBERT
HORLOCKER; and UNKNOWN OFFICERS
OF THE WARREN POLICE DEPARTENT

         Defendants.
_____/

**REPORT AND RECOMMENDATION**

      Plaintiff Charles Boyd has brought claims arising out of his arrest by officers of

the Warren, Michigan Police Department during a May 28, 2014 traffic stop. Before the

Court is a Motion for Summary Judgment [ECF No. 49] filed by Defendants Colin

McCabe and Jeffrey Masserang, which has been referred for a Report and

Recommendation under 28 U.S.C. § 636(b)(1)(B).  For the reasons discussed below, I

recommend that the Motion be GRANTED and that these Defendants be DISMISSED

WITH PREJUDICE.

## I.   FACTS

### A.   The Complaint

This case arises out of Plaintiff's arrest by officers of the Warren, Michigan Police Department during a May 28, 2014 traffic stop.   In his amended complaint [ECF No. 11], Plaintiff  alleges that several weeks earlier, on April 18, 2014, he was riding his bicycle along westbound Eight-Mile Rd. within the City of Warren when Defendant Warren Police Officers McCabe and Masserang abruptly pulled their squad car in front of him, forcing him to stop.  *Amended Complaint,* ¶ 26.  McCabe told Plaintiff that there had been reports of a stolen bicycle in the area and proceeded to physically search Plaintiff and remove his wallet and checkbook from his person.  *Id.* ¶ ¶ 27-28.  McCabe then asked Plaintiff "Where's the weed?" to which Plaintiff responded that he did not have any marijuana.  *Id.* at ¶ 29.  McCabe and Masserang continued to ask Plaintiff whether he was a marijuana user, buyer, or carrier.  *Id.* ¶ 30.  Plaintiff alleges that as he was allowed to leave, McCabe stated that he would "get" Plaintiff or words to that effect.  *Id.* at ¶ 33.

Several weeks later at 1:00 a.m. on May 28, 2014, McCabe and Masserang stopped a car that Plaintiff was riding in several of his friends.  *Id.* at ¶ 35.  At the time of the traffic stop, Matthew Riggs ("Riggs") was driving, Nicole Nida ("Nida") was sitting in the front passenger seat, Plaintiff was sitting in the back seat directly behind Riggs, and a forth passenger, Andrew West ("West") was sitting next to Plaintiff in the back seat.  *Id.* Plaintiff alleges that just prior to the stop, McCabe and Masserang observed Plaintiff

exiting a 7-11 store and entering the car.  *Id.* at ¶ 37.  Plaintiff states that a recording of

the incident indicates that as he entered the car, "McCabe and/or [] Masserang" were

laughing about the soon to transpire traffic stop.  *Id.* at ¶¶ 37-38.  He claims that the

officers then executed the traffic stop on the pretext that Nida looked ill although in fact,

her only "abnormal" behavior was letting her arm hang out the front passenger side

window.  *Id.* at ¶ 39.

After signaling the car to stop, McCabe approached the driver's side of the car

while Masserang approached the passenger side.  *Id.* at ¶ 41.  Masserang ordered the car's

occupants to produce identification.  *Id.*  Plaintiff responded by placing his identification

into his right hand "while still holding his cell phone."  *Id.*  Plaintiff alleges that as he was

looking rightward to listen to Masserang's orders, McCabe "suddenly and without

warning or reason" jabbed Plaintiff's left shoulder with a flashlight while Plaintiff was

still seated.  *Id.* ¶ 44.

Plaintiff alleges that he was unable to "fully decipher" Masserang's orders but

acknowledges that Masserang ordered the car's occupants out of the vehicle.  *Id.* at ¶ 43.

He  alleges that he had difficulty obeying McCabe's command to exit because McCabe

stood "so closely to the vehicle and exit door." *Id.* ¶ 44.  He alleges that his failure to exit

was due to McCabe standing too close to the rear left passenger side door and Plaintiff

perceived the need to text his father due the fear created by his last encounter with

McCabe.  *Id.* at 48.  Plaintiff alleges that McCabe then "shamelessly and humiliatingly"

grabbed Plaintiff's phone out of his hands, causing Plaintiff's identification "to flutter to the outside ground." *Id.* ¶ 49.  Plaintiff alleges that McCabe then attempted to slam Plaintiff's head and neck into the car door, which had the effect of pushing Plaintiff into the back seat of the car, and that he continued to "beat, choke, strike, injure, humiliate, harass, and otherwise constitutionally violate Plaintiff's rights." *Id.* at ¶ 50-51.  Plaintiff alleges that McCabe then grabbed his legs in an effort to remove him from the car, at which time Plaintiff's head hit the car's running board and then the cement. *Id.* at ¶ 52. Plaintiff claims that McCabe then punched him, causing his head to hit the cement again. *Id.* at ¶ 53.

Plaintiff alleges that as a result of the severe beating at the time of the arrest, he suffered a Traumatic Brain Injury and "upon information and belief, lost consciousness for several moments" during the time that he was being beaten. *Id.* at ¶ 59.  He alleges that the diagnosis was confirmed by neuropsychologist Dr. Bradley Sewick, who also concluded that Plaintiff experienced cognitive dysfunction and Post Traumatic Stress Disorder ("PTSD").[1] *Id.*  Plaintiff states that upon arriving at the jail, he remained handcuffed and seated on a bench while continually complaining about his discomfort, pain, and nausea. *Id.* at ¶¶ 62-63. He states that after some time, he leaned over and

---

[1] Plaintiff has not submitted any medical reports or other evidence substantiating his claim of physical injuries.  Moreover, Plaintiff has been precluded from offering any expert reports. *See* Opinion and Order (ECF No. 45), objections overruled in ECF No. 59.

vomited.  *Id.*  Plaintiff alleges that McCabe, Masserang, and other unknown officers demanded that he clean up his vomit with "very limited means and/or materials to do so." *Id.*  at ¶ 64.  Plaintiff alleges that "upon information and belief," Defendants stepped on Plaintiff's hands while he tried to clean up after himself.  *Id.* at ¶ 64.  Plaintiff alleges that while he was being booked, an unknown officer choked him while another unknown officer stood idly by, watching and eating an apple.  *Id.* at ¶ 66.  He alleges that as the booking process continued, an unknown officer slammed his head and neck against a wall.  *Id.* at ¶ 67, and another unknown officer later grabbed Plaintiff's hair as he was putting him into a jail cell.  *Id.* at ¶ 68.  Plaintiff alleges that he was already "scared, dizzy, injured, nauseous, violated, tired, lonely, and otherwise humiliated." *Id.*

Plaintiff asserts the following claims against Defendants McCabe and Masserang:[2]

Count I: Fourth Amendment claim of excessive force, under 42 U.S.C. § 1983.

Count II: Failure to prevent use of excessive force, under 42 U.S.C. § 1983.

Count IV: State law claim of assault and battery.

Count V: State law claim of intentional infliction of emotional distress.

Count VII: Eighth Amendment claim under 42 U.S.C. § 1983.

---

[2] On April 18, 2018, the Court dismissed Plaintiff's municipal liability claim against the City of Warren.  ECF No. 28.  Defendant Robert Horlocker was also dismissed.

### B.    Plaintiff's Deposition Testimony

Plaintiff testified that he first encountered Defendant Officer Masserang on Good Friday, 2014, when Masserang and another officer–he thought it was Defendant McCabe– pulled him over as he was riding his bicycle.  *Plaintiff's Deposition*, Plaintiff's Exhibit 5, ECF No. 54-7, PageID.1605-06.  Masserang patted him down, questioned him about drugs, and gave him a "verbal warning." *Id*. PageID.1606.  Plaintiff's next encounter with Masserang and McCabe was May 28, 2014, the day of the events that culminated in this lawsuit.  Plaintiff testified that he and three other people left a 7-11 in a car, and were pulled over by the police a short distance from the store. *Id*. 1608-09.  Plaintiff was seated in the back seat, behind the driver.  *Id*. One of the officers asked Matt, the driver, to get out of the car, and Matt complied.  *Id*. 1611.  Plaintiff was on his cell phone at the time, and Officer Masserang asked everyone for identification.  Plaintiff testified that he took his wallet out of his pocket, and had his cell phone and wallet in his hand as he was talking to his father on the phone.  Masserang was at the back window on the passenger side of the car at this time, and the window was partially open.  *Id*.

Plaintiff testified that Masserang told him to get out of the car, and the other officer (later identified as Defendant McCabe) smacked the phone out of his hand, smashed his head into the door, pushed him inside the car, grabbed his neck, and tried to yank him out of the car. McCabe had opened the back door on the driver's side.  *Id*. 1612, 1613.  Plaintiff denied that he grabbed McCabe's uniform.  *Id*. 1703.  Plaintiff said that

-6-

he tried to get out of the car by himself, but McCabe grabbed him by the legs and yanked him out of the car. Plaintiff testified that as he was being pulled out of the car, he hit his head on the frame and then hit his head on the cement. He said that the other officer (Masserang) flipped him over, sat on top of him, and punched him in the head "a couple of times" before pushing his head into the cement. Before putting him in the car, McCabe "jabbed" him in the side. *Id*. 1613. Plaintiff claims that McCabe never asked him for his ID or talked to him, but rather was just "going to town" on him. *Id*. 1612-13. Plaintiff conceded that while he was on the ground, he may have tucked his arms under his body in an effort to protect himself. *Id*. 1614.

Plaintiff was taken to the jail, where he says both McCabe and Masserang were present. *Id*. 1618-19. He testified that while he was seated on the bench and being asked for information, an officer pushed his head against the wall. *Id*. 1622. He said that at one point he threw up, and someone brought him something–perhaps a paper towel–to clean it up. *Id*. 1620. As he was trying to do so, he said, "one of the officers stepped up and pushed [his] head into the puke." *Id*. 1622. Then, another officer (not McCabe or Masserang) grabbed him by his hair and threw him into the bullpen. *Id*. 1622-23.

Plaintiff testified that later, when he was in the fingerprinting room, another officer taunted him, calling him an idiot. When Plaintiff said something in response, this other officer "went ballistic" and started choking him and bashed his head into the wall. *Id*. 1623, 1624-25. He said that this officer also "threw him" around the room. During that

time, a second officer who was present was eating an apple.  *Id*. 1625.  Plaintiff did not

know the name of the officer who choked him in the fingerprint room.  *Id*. 1700.

### C.   Deposition of Defendant McCabe

Defendant Officer McCabe testified that while on patrol on May 28, 2014, he

followed a car in which he had observed a woman hanging out of the window.  *McCabe*

*Deposition,* Plaintiff's Exhibit 3, ECF No. 54-5, PageID.1482.  He and his partner,

Defendant Officer Masserang, stopped the car and asked the driver for his license.  When

the driver produced an expired license, he complied with an order to exit the car and was

detained.  *Id.* 1482.  McCabe testified that he wanted everyone out of the car because he

smelled marijuana.  Several times, Masserang ordered Plaintiff, who was in the back seat,

to get out of the car, but Plaintiff did not comply. McCabe opened the rear door and

ordered Plaintiff out, but he still did not move. McCabe then poked Plaintiff with his

flashlight "to get his attention," but Plaintiff still refused to comply. *Id*.  McCabe offered

the following testimony as to what happened next:

> "He continued not to move. He continued arguing with Officer Masserang.
> After several seconds, he finally then turned, started to step out of the car
> while holding his cell phone.  I took his cell phone out of his hand, at which
> time, he grabbed my hand–or my wrist.  I then pushed him back against the
> car. He then buckled.  We ended up back inside the car.  I got out of the car.
> I grabbed him by the feet to bring him out of the car. At that point in time,
> he was holding on to another passenger, so I took two attempts to pull him
> from the car." *Id*.

-8-

Defendant McCabe later corrected part of this testimony, saying that Plaintiff did not grab his left wrist, because he (McCabe) did not put his arm into the car at that point. *Id*. 1487.  McCabe also acknowledged that at Plaintiff's criminal trial, he testified that he poked Plaintiff with his flashlight *before* he told him to get out of the car.  However, he added that Masserang had ordered Plaintiff out of the car several times, *id*., and that Plaintiff and Masserang were arguing back and forth.  *Id*. 1490.

McCabe testified that once Plaintiff was out of the car and on the ground, he "rolled into fetal position," holding onto McCabe's left arm.  McCabe then struck Plaintiff once in the face, and "loaded up to strike him again," when Plaintiff let go. McCabe and Masserang were then able to handcuff the Plaintiff.  *Id*. 1482.

Plaintiff, as well as the other individuals who were in the car, were taken to the jail.  McCabe testified that at the jail, Plaintiff kept coughing and forcing himself to vomit. When Plaintiff actually did throw up on the floor, officers poured sawdust on the vomit and asked Plaintiff to clean it up.  Plaintiff was given a piece of cardboard–a makeshift dust pan–and at some point flicked the mess toward McCabe's and Masserang's legs.  *Id*. 1482, 1494.  McCabe then held the Plaintiff down for a few seconds, and several officers came to assist.  *Id.*  Plaintiff was then turned over to the jail authorities.  *Id*. 1482.  While McCabe testified that it was he who was holding the Plaintiff down, he denied that he shoved Plaintiff's face into the vomit, and denied that anyone stood on Plaintiff's hand.  *Id*. 1494.  McCabe testified that he left the jail before

-9-

Plaintiff's fingerprints and mug shots were taken.  *Id*. 1497.

### D.    Testimony of Defendant Masserang

#### 1.    Deposition

Defendant Officer Jeffrey Masserang testified that he did not know the Plaintiff
before the traffic stop on May 28, 2014. *Masserang Deposition*, Plaintiff's Exhibit 4,
ECF No. 54-6, PageID.1532.  After they pulled the car over, he was outside of the
passenger side, and the rear window on that side was partially open.  *Id*. 1548.  Masserang
testified that he asked for Plaintiff's identification, but Plaintiff would not give it to him.
*Id*. 1545.  He said that he repeatedly asked Plaintiff for his driver's license, but Plaintiff
did not comply.  *Id*. 1549.  He testified that when McCabe was trying to get the Plaintiff
out of the car, he (Masserang) was trying to pull the Plaintiff and the other back seat
passenger apart.  *Id*. 1554-55.  Masserang testified that when Plaintiff was on the ground
outside of the car, he saw him pull his arms underneath his chest and attempt to get away
from McCabe by twisting and rolling on the ground.  *Id*. 1554.

#### 2.    Criminal Trial

At Plaintiff's criminal trial held on May 15, 2017 in the Warren, Michigan District
Court, Masserang testified that after he and McCabe stopped and approached the car that
Plaintiff was in, he observed that the female passenger in the front seat appeared
intoxicated, and that there was vomit running along her side of the car.  *Masserang Trial
Testimony*, Defendants' Exhibit E, ECF No. 49-6, PageID.1239.  He also smelled the

odor of marijuana.  *Id*.  He asked the Plaintiff, who was seated in the rear driver's side

passenger seat, for his identification.  Plaintiff, who had his cell phone in his hand, pulled

out his ID but did not give it to the officer.  *Id*. 1241.  Masserang testified that he ordered

Plaintiff out of the car several times as McCabe approached, but Plaintiff did not comply.

*Id*. 1243-44.  McCabe opened the driver's side rear door, and Masserang continued to

order Plaintiff out of the car.  *Id*. 1244.  Masserang testified that McCabe nudged Plaintiff

with his flashlight to get his attention, but Plaintiff still did not exit the car.  *Id*. 1244-45.

At some point, Plaintiff turned to come out of the car, but appeared to be texting on his

cell phone.  Masserang testified that this was a security concern, because "somebody

could be contacting a friend to ambush on a–on a traffic stop."  *Id.* 1245.  Masserang then

observed a scuffle between Plaintiff and McCabe that resulted in McCabe being back in

the car with the Plaintiff. *Id*. 1247.  He saw Plaintiff and West (the other passenger)

locked together, and he reached in to try to get Plaintiff and West apart.  He said that

there was a tug-of-war scenario, with McCabe trying to pull Plaintiff out of the car and

West pulling Plaintiff in the opposite direction. Eventually they separated and Plaintiff

came out of the car.  *Id*. 1247-48.  Masserang testified that he did not see McCabe assault

Plaintiff in the back seat.  *Id*. 1247.

Masserang testified that when Plaintiff was on the ground, he was struggling with

McCabe, twisting and rolling.  He stated that as he went to assist, he saw Plaintiff taking

hold of McCabe's wrist.  *Id*. 1249-50.

-11-

## E.   The Videos

Exhibit C to Defendants' motion is a CD ROM containing a video recording of the events on the scene of the traffic stop, taken from the recorder in the police scout car.

Exhibit D to Defendants' motion is a CD ROM containing a video taken at the jail. It contains three sections: the general intake area, the holding cell (bullpen), and the fingerprint/booking room.

(The contents of these videos will be set forth in detail below, in the Discussion section).

Plaintiff was charged criminally, and convicted in the Warren district court of disobeying a lawful police command. That conviction was reversed on appeal to the Macomb County Circuit Court, and remanded for retrial. It appears that a conviction in the second trial was also reversed. *See Defendants' Exhibit E*, Trial Transcript, ECF No. 49-6, PageID.1173.  Before the third trial concluded, Plaintiff pled guilt to the charge of "disorderly jostling" with Officer McCabe, providing the following factual basis:

COUNSEL:  Did you jostle with Officer McCabe?

PLAINTIFF: On the ground.

COURT:    Did you have any legal right or legal authority
          to perform that act?

PLAINTIFF: No.

*                           *                           *

COURT:    Was it physical contact?

-12-

PLAINTIFF: It was physical contact.

COURT:        And you knew that you were interacting with a police officer at the time you performed that act?

PLAINTIFF: Yes.

\*                                    \*                                    \*

COURT:        And you knew you were interacting with a police officer who was endeavoring to detain you, correct?

PLAINTIFF: Yeah.

COURT:        And in spite of that knowledge you in fact did jostle with Officer McCabe on the ground on the date and time of the incident?

PLAINTIFF: Yes.

*Volume 2 of Trial Transcript*, Defendants' Exhibit F, ECF No. 49-7, PageID.1411-1413.

## II.    STANDARD OF REVIEW

Summary judgment is appropriate where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R.Civ.P. 56(c).  To prevail on a motion for summary judgment, the non-moving party must show sufficient evidence to create a genuine issue of material fact. *Klepper v. First American Bank*, 916 F.2d 337, 341-42 (6th Cir. 1990). Drawing all reasonable inferences in favor of the non-moving party, the Court must determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law."

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986).  Entry of summary

judgment is appropriate "against a party who fails to make a showing sufficient to

establish the existence of an element essential to that party's case, and on which that party

will bear the burden of proof at trial."  *Celetox Corp. v. Catrett*, 477 U.S. 317, 322

(1986).  When the "record taken as a whole could not lead a rational trier of fact to find

for the nonmoving party," there is no genuine issue of material fact, and summary

judgment is appropriate.  *Simmons-Harris v. Zelman*, 234 F.3d 945, 951 (6th Cir. 2000).

Once the moving party in a summary judgment motion identifies portions of the

record which demonstrate the absence of a genuine dispute over material facts, the

opposing party may not then "rely on the hope that the trier of fact will disbelieve the

movant's denial of a disputed fact," but must make an affirmative evidentiary showing to

defeat the motion.  *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479 (6th Cir. 1989).

The non-moving party must identify specific facts in affidavits, depositions or other

factual material showing "evidence on which the jury could *reasonably* find for the

plaintiff."  *Anderson*, 477 U.S. at 252 (emphasis added).  If the non-moving party cannot

meet that burden, summary judgment is proper.  *Celotex Corp.*, 477 U.S. at 322-23.

### III.   DISCUSSION

### A.   Excessive Force and Failure to Intervene (Counts I and II)

Defendants McCabe and Masserang seek dismissal of Plaintiff's claims under 42

U.S.C. § 1983 (excessive force and failure to intervene) on the basis of qualified

-14-

immunity.

Qualified immunity is an affirmative defense.  A state official is protected by qualified immunity unless the Plaintiff shows (1) that the Defendant violated a constitutional right, and (2) the right was clearly established to the extent that a reasonable person in the Defendant's position would know that the conduct complained of was unlawful. *Saucier v. Katz*, 533 U.S. 194 (2001). Under  *Saucier*, the inquiry was sequential, requiring the district court to first consider whether there was a constitutional violation.  However, in *Pearson v. Callahan*, 555 U.S. 223, 129 (2009), the Supreme Court held that the two-step sequential analysis set forth in *Saucier*  is no longer mandatory.  Rather, *Pearson* commended the order of inquiry to the judge's discretion, to be exercised on a case-by-case basis.

We will begin with the issue of whether these Defendants violated the Plaintiff's constitutional rights.  A claim of excessive force brought by a free individual, such as the Plaintiff was at the time of his arrest, is analyzed under the Fourth Amendment standard of reasonableness.  *Graham v. Connor*, 490 U.S. 386, 394-95 (1989).[3] That standard is

---

[3] Part of Plaintiff's claim involves an allegation of excessive force at the jail during the booking procedure, while he was in police custody following his arrest. In *Aldini v. Johnson*, 609 F.3d 858 (6th Cir. 2010), the Sixth Circuit clarified the standard that would be applied to excessive force claims brought by individuals who had been arrested and turned over the jail authorities for booking, but who had not yet appeared before a judge for a probable cause hearing.  An excessive force claim that arises in the context of an arrest or investigative stop of a free citizen is clearly analyzed under the Fourth Amendment's "reasonableness" standard. *See Graham v. Connor*. A claim brought by a convicted defendant serving a jail or prison sentence is governed by the Eighth

objective, and is applied without reference to the officer's subjective motivations.  *Id*.  In

*Gaddis v. Redford Township*, 364 F.3d 763,772 (6th Cir. 2004), the Court set forth the

following factors to be considered:

> "Courts must apply an objective standard, looking to 'the facts and
> circumstances of each particular case, including [1] the severity of the crime
> at issue, [2]whether the suspect pose[d] an immediate threat to the safety of
> the officers or others, and [3] whether he was actively resisting arrest or
> attempting to evade arrest by flight.' *Russo v. City of Cincinnati*, 953 F.2d
> 1036, 1044 (6th Cir. 1992) (quoting *Graham*, 490 U.S. at 396, 109 S.Ct.
> 1865) (brackets added)."

This is a non-exhaustive list, and the "'proper application' of the reasonableness

inquiry 'requires careful attention to the facts and circumstances of each particular

case....'" *St. John v. Hickey*, 411 F.3d 762, 771 (6th Cir. 2005), quoting *Graham*, 490 U.S.

at 396.  The standard "contains a built-in measure of deference to the officer's on-the-spot

judgment about the level of force necessary in light of the circumstances of the particular

case." *Burchett v. Kiefer*, 310 F.3d 937, 944 (6th Cir. 2002).  A court must recognize that

"police officers are often forced to make split-second judgments–in circumstances that

are tense, uncertain, and rapidly evolving–about the amount of force that is necessary in a

particular situation." *Graham* at 397.

---

Amendment proscription against cruel and unusual punishment. *See Whitley v. Albers*,
475 U.S. 312, 318-322 (1986). In *Aldini*, the Sixth Circuit held that during the time an
individual is in custody between his arrest and his appearance before a judge, the Fourth
Amendment applies.

At the summary judgment stage, the Court ordinarily draws all reasonable factual inferences in favor of the non-moving party. *Anderson v. Liberty Lobby*. However, in *Scott v. Harris*, 550 U.S. 372 (2007), the Supreme Court gave primacy to a video recording that plainly contradicted the plaintiff's version of events. In a case that involved a high speed automobile chase, the plaintiff claimed that the road was mostly empty and that he remained in control of his car. The videotape showed the Plaintiff's car "racing down narrow, two-lane roads in the dead of night at speeds that are shockingly fast." The car swerved around more than a dozen other cars and forced cars travelling in both directions to the shoulder to avoid being hit. *Id.* at 379-380. The Supreme Court stated, "Far from being the cautious and controlled driver the lower court depicts, what we see on the video more closely resembles a Hollywood-style car chase of the most frightening sort...." *Id*. Noting that "Respondent's version of events is so utterly discredited by the record that no reasonable jury could have believed him," the Court held that "[w]hen opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Id*. at 380. In such case, the Court held, there is no "genuine" dispute as to the facts. *Id*.

Turning to the case at hand, the video evidence presents as a four act play. Act I takes place at the scene of the traffic stop, Act II is the general intake area of the jail, Act III is the holding cell, and Act IV is the fingerprinting/booking room.

## Act I

Plaintiff concedes that Defendant Masserang told him to get out of the car, and he alleges that he tried to get out of the car himself.  He alleges that Defendant McCabe smacked his cell phone out of his hand, smashed his head into the door, pushed him inside the car, grabbed him by the neck, and yanked him out of the car.  He said that he hit his head as he was being pulled out, and that once on the ground, McCabe punched him and generally "went to town" on him.  The video (Defendants' Exhibit C) is consistent with parts of Plaintiff's testimony. For example, McCabe does pull him out of the car.  Plaintiff's testimony is also consistent with parts of McCabe's and Masserang's testimony: all testified that Masserang ordered Plaintiff out of the car, and that Plaintiff was talking on his cell phone.  However, viewed under the totality of the circumstances, the video is clearly at odds with Plaintiff's claim that the Defendants used excessive force, i.e., that their actions were unreasonable under the Fourth Amendment.

The video begins with the Officers following the car from the 7-11 and pulling it over.  At 1:25:53, McCabe approaches the driver's side and Masserang approaches the passenger side.  The driver hands something–presumably his driver's license–to McCabe, and at 1:26:09, the driver gets out of the car. From 1:26:09 to 1:26:51, he is patted down and handcuffed without incident, and McCabe escorts him away from the car.  Masserang remains at the passenger sided of the car, and is seen up to 1:27:07 leaning down toward the rear window.  At 1:27:13, McCabe returns to the car, and at 1:27:15 he opens the rear

driver's side door. From 1:27:15 to 1:27:24, McCabe stands by the open door, and Plaintiff remains seated in the back seat.  At 1:27:24, McCabe nudges Plaintiff with his flashlight. From 1:27:24 to 1:27:36, there appears to be no response from the Plaintiff.  At 1:27:36, Plaintiff can be seen turning toward McCabe, and he is texting on his cell phone. It is unclear whether McCabe reaches for the phone or, as Plaintiff claims, slaps the phone, but at 1:27:39-40, Plaintiff is seen grabbing McCabe's shirt.  McCabe then falls forward into the car, and for about the next 18 seconds, 1:27:40 to 1:27:54, there is a struggle inside the car, which culminates in McCabe pulling Plaintiff out of the car by the legs at 1:27:58.  During this struggle, McCabe expends some effort in pulling the Plaintiff toward him, and the other rear passenger's hands can be seen holding the Plaintiff at 1:27:58, as Plaintiff is being pulled out of the car.

At 1:28:06, Plaintiff is on the ground struggling, with McCabe on top of him. Consistent with Plaintiff's own testimony, it appears that Plaintiff is tucking his hands underneath his body.  At 1:28:06 to 1:28:09, McCabe (not Masserang, as Plaintiff testified) appears to punch the Plaintiff twice. No punches are thrown after that. Masserang can be seen approaching McCabe and the Plaintiff, who are still on the ground, at 1:28:16, and for approximately the next 48 seconds McCabe and Masserang continue to struggle with the Plaintiff until he is picked up off the ground–handcuffed–at 1:29:04.

-19-

Applying the *Gaddis* factors (and again, this is a non-exhaustive list), the offense being investigated involved possession of controlled substances, based on the officers' detection of the odor of marijuana emanating from the car. In retrospect, this was likely not the most serious crime these officers ever investigated, but at the time of the stop the potential offense could have ranged from misdemeanor possession to felony possession with intent to distribute. Standing alone, this factor may not have justified more than minimal force by the police. In this regard, McCabe nudging Plaintiff with his flashlight was an extremely mild application of force, and justified as a means to get the attention of an individual who is not complying with orders to get out of the car. Moreover, "[n]ot every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers violates the Fourth Amendment." *Graham v. Conner*, 490 U.S. at 396 (internal citation and quotation marks omitted).

As to whether the Plaintiff posed a threat to the safety of the officers, the video, along with undisputed testimony of both Plaintiff and Defendants, shows Plaintiff texting on his cell phone during the time that he is being continually ordered out of the car. As Defendant Masserang testified, this presents a security concern in that a suspect could be communicating with an accomplice. Given this concern, along with the fact that Plaintiff continued to text both while disregarding Masserang's directives to exit the car and as he turns to get out of the car, McCabe's act of either grabbing the cell phone or even smacking it out of Plaintiff's hand cannot be deemed unreasonable under *Graham*.

-20-

Then there is the Plaintiff's continuous refusal to comply with police commands to get out of the car.  By itself, a refusal to exit a car does not constitute "active resistance" that would justify a greater level of force by the police. *See Eldridge v. City of Warren*, 533 F. App'x 529, 535 (6th Cir. 2013), citing *Coles v. Eagle*, 704 F.3d 624, 629–30 (9th Cir.2012).  But here, as shown both by the video and the undisputed testimony, there is more. Plaintiff does not simply and passively refuse to comply with repeated commands to exit the car, he continues to text. And in his "Plaintiff's Statement" portion of the Joint Discovery Plan and Status Report [ECF No. 34], Plaintiff concedes that he was "needlessly belligerent":

> "Charles Francis Boyd refused to provide identification, became needlessly belligerent, and demanded that Officer Masserang provide Plaintiff with his name and badge number.  Plaintiff then took his identification card out of his wallet, placed it under his cell phone, and remained steadfast in his refusal to identify himself or provide identification."  ECF No. 34, PageID.610-11.[4]

Moreover, the video clearly shows, at 1:27:39-40, that after the cell phone is either taken from or knocked out of his hand, Plaintiff grabs McCabe by the shirt, an act that would be reasonably perceived as physical resistance. The struggle inside the car continues for only

---

[4] Counsel's statement in the Joint Discovery Plan can be considered an admission of counsel that is binding on his client.  *See* 6 A. Wright & A. Miller, Federal Practice and Procedure § 1527 (3d Ed.)("Courts generally hold stipulations, agreements, or statements of counsel made at the pretrial conference binding for purposes of the trial"); *Liberty Mut. Ins. Co. v. Midwest Cold Storage & Ice Corp.*, 1989 WL 151924, at *3 (D. Kan. 1989)("The court finds that...admissions of counsel made during a pretrial conference and incorporated in the pretrial order are binding on the parties....").

about 18 seconds, and the video makes clear that McCabe encounters resistance while attempting to pull Plaintiff from the car.

Again, McCabe's actions must be viewed under the totality of the circumstances, from the perspective of a police officer who must make an immediate, on-the-spot judgment. *Graham*.[5]  Here, the totality of the circumstances shows McCabe faced with a belligerent and non-compliant individual who ignores repeated directives to provide identification and to exit the car, even when nudged with a flashlight, but instead continues to text on his cell phone.  The situation rapidly escalates when Plaintiff grabs McCabe by the shirt and the other passenger in the back seat becomes involved in pulling or holding the Plaintiff.  The time span from when Plaintiff grabs McCabe's shirt and McCabe pulls Plaintiff out of the car is only 22 seconds. In terms of the situation culminating in Plaintiff being pulled from the car, McCabe's actions were reasonable under the circumstances, and therefore not violative of the Fourth Amendment.

---

[5] Indeed, during McCabe's deposition, Plaintiff's counsel acknowledged the difficulties and uncertainties that police officers face on the street:

"I've got a lot of respect for what you do.  I think I told you that in the criminal trial, and I can't imagine what it would be like to be a police officer and not knowing what you're walking into from one minute to the next.  I mean, people can have very small guns and they can do a lot of damage, so please don't think that I'm disrespecting you or what you do." ECF No. 54-5, PageID.1484.

Next, we examine what happened from the time Plaintiff was on the ground outside the car to the time he was led away from the scene.  The video shows an initial struggle between the Plaintiff and McCabe, and shows McCabe punching the Plaintiff as many as–but not more than–two times.  Importantly, the Plaintiff admitted at his guilty plea that he physically resisted "on the ground" as McCabe was attempting to detain him, and that he had no legal right to do so.  He also admitted at his deposition that he tucked his arms under his body during this time.  It is undisputed, therefore, that Plaintiff was physically resisting arrest while he was on the ground.[6]

"Sixth Circuit case law recognizes that the reasonableness of an officer's use of force turns on whether the suspect is actively resisting arrest."  *Calvin v. City of Eastpointe*, 2019 WL 2368679, at *4 (E.D. Mich. 2019), citing *Thomas v. City of Eastpointe*, 715 F. App'x 458, 460 (6th Cir. 2017) ("This circuit—and several others—have drawn the line at the suspects active resistance.").  In *Rudlaff v. Gillispie*, 791 F.3d 638, 642 (6th Cir. 2015), the Sixth Circuit found that when a suspect is actively resisting arrest, police would be justified in using a taser or knee strike to subdue him.  Here, given Plaintiff's admitted resistance and the rapid escalation of events, Defendant

---

[6] The state criminal judgment estops Plaintiff from contesting the fact that he resisted (or "jostled") as McCabe was attempting to arrest or handcuff him.  The doctrine of collateral estoppel generally precludes relitigation of an issue of fact or law which was previously decided in a different cause of action.  *Montana v. United States*, 440 U.S. 147, 153 (1979).  Collateral estoppel may be raised as a defense in a §1983 case where the prior issue of law or fact was decided in the context of a state criminal case.  *Allen v. McCurry*, 449 U.S. 90, 104 (1980).

McCabe did not act unreasonably in striking Plaintiff in the head or face in an effort to subdue him–much as the officer did in *Calvin*.  And neither the video nor any of the testimony shows that Defendant Masserang did anything other than assist McCabe in handcuffing the Plaintiff.  The video does not show that Masserang struck Plaintiff or otherwise used excessive force.

The State district court judge therefore got it right at Plaintiff's sentencing when he said:

> "This entire transaction and occurrence is a result–look at me–is a result of your own willfulness, sir.  You don't have to like the police. You don't frankly have to agree with the police, but you certainly are not entitled to fight with them, to jerk them around, or to torture them at the side of the road or anytime thereafter.
>
> After watching the video ad nauseam from still frames through full speed, I'm more that satisfied that you did commit the crimes accused of, that it was a reasonable and appropriate disposition at the last trial, and that I would have a reasonable expectation that you would have been convicted again today....
>
> You have an absolute right to your opinion. You don't have to like cops, you don't have to agree [with] them.  I'm certainly okay with that and I will defend to the death your right to have a mind of your own.  What you don't have a right to do is to have your own facts.  When they tell you to get out of the car, you get out of the car.  When they tell you to put your hands behind your back, you put your hands behind your back.  It's not a game and it's not a joke There are real consequences to the choices you make every single day."  ECF No. 49-7, PageID. 1414-15.

So, no reasonable jury could find that Defendants McCabe and Masserang violated Plaintiff's Fourth Amendment rights as to the events of Act I.  There being no constitutional violation, these Defendants are entitled to qualified immunity.  *Saucier v.*

-24-

*Katz*. And since there was no constitutional violation, the Plaintiff's claim of failure to protect (Count II) likewise fails.

## Act II

Defendants' Exhibit D contains three relevant video files. The file labelled "Jail - Booking 1" depicts what happened in the general booking area of the jail. At 2:09:23, the four arrestees are escorted into the area and are seated on a bench. The Plaintiff is the third person from the left on the bench. At 2:10:07, a female officer pats down the female arrestee; at 2:26:04, the individual in the yellow shirt is patted down and taken out of the room by McCabe; at 2:28:19, the individual on the far right, seated next to Plaintiff, removes his shoes, and at beginning at 2:28:51 he is patted down and led out of the room. All three of these individuals are frisked and taken out of the room without incident.

After the other people are taken out of the room, Plaintiff appears restless and agitated, moving around a lot. From 2:32:23 to 2:32: 40, he slides off of the bench onto the floor, and then gets back on the bench. At 2:34:18 he stands and faces an officer, then sits back down. There is no physical contact between the Plaintiff and the officer. From 2:34:35 to 2:35:23, Plaintiff is seen bobbing his head back and forth toward the same officer at his right. At 2:35:25 the officer approaches Plaintiff and lifts him off the bench. From 2:35:30 to 2:35:50, the officer and Plaintiff appear to be struggling, with Plaintiff facing the glass wall behind the bench. The officer appears to be trying to maintain control over Plaintiff, and while Plaintiff is bent forward at one point, the officer does not

strike him or forcefully push his head against the wall.  At 2:35:51, Plaintiff is seated back down on the bench. To the extent that Plaintiff contends that this encounter constitutes unreasonable, and therefore excessive force, the video contradicts that claim. It bears repeating that "[n]ot every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers," violates the Fourth Amendment. *Graham v. Conner*, 490 U.S. at 396. In any event, it was not Defendant McCabe who was involved in this incident.[7]

From 2:37:09 to 2:37:22, Plaintiff again leans over with his head between his legs. He bends over in a similar way at 2:39:57, 2:41:15, and from 2:43:53 to 2:48:37.  From 2:49:21 to 2:49:40, an officer approaches the area where Plaintiff is seated, and appears to sprinkle something on the floor from a box.  A tan substance can be seen on the floor.

From 2:50:05 to 2:53:15, an officer takes Plaintiff off the bench, removes his handcuffs, and pats him down.  During this time, at 2:52:06, Plaintiff forcefully kicks his shoes off.  At 2:53:23, Plaintiff is given some object, and commences to wipe or sweep the tan substance on the floor.  Defendant McCabe is seen at Plaintiff's right side, watching. At 2:53:59, Plaintiff flings the substance with his right hand, and at 2:54:28, he again flings it toward the right.  At 2:55:18, he flings the substance toward McCabe's shoe. McCabe then grabs Plaintiff and takes him to the ground.  Another officer

---

[7] During this time, McCabe is at the other end of the bench, by the female arrestee, who has now returned to the bench.

approaches and appears to take hold of Plaintiff.  A struggle between Plaintiff and the two officers continues to 2:56:26. At 2:56:26, the second officer, who is wearing a baseball cap, grabs Plaintiff by his hair and escorts him out of the room.

Plaintiff asserts that during the incident with McCabe and the other officer, his face was pushed into the vomit and his head hit the floor. It is unclear from the video whether this happened, because the position of the officers temporarily blocks the view of the Plaintiff.  Regardless, when viewed under the totality of the circumstances, the video negates Plaintiff's claim of excessive force, because the officers' actions were reasonable in light of the events unfolding after Plaintiff flung the substance that was on the floor. And the question of the reasonableness of the force used must be assessed without regard to whether or not McCabe and the other officer subjectively intended to push Plaintiff's face or head toward the floor.  "[T]he 'reasonableness' inquiry in an excessive force case is an objective one: the question is whether the officers' actions are 'objectively reasonable' in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation." *Graham v. Connor*, 490 U.S. at 397, citing *Scott v. United States*, 436 U.S. 128, 137–139 (1978).  Here, the officers were faced with someone who was flinging muck about the room, including toward them. As was the case in Act I, the officers were reacting to a rapidly developing situation in an attempt to restrain an individual who was again behaving in an aggressive and defiant manner. The encounter lasted a little over one minute until Plaintiff was removed from the room.

-27-

Under the totality of the circumstances as seen in the video, the actions of McCabe and the other officer during this time were proportional to the situation they faced, and clearly meet the Fourth Amendment standard of reasonableness.[8]

Because there was no constitutional violation, the Plaintiff's claim of failure to intervene also fails, and McCabe and Masserang are entitled to qualified immunity.

Which brings us to the question of whether the officer in the baseball cap used excessive force when he dragged Plaintiff out of the room by the hair. This may be a somewhat unconventional way to control an individual, and there may have been better ways to do it, but "the Fourth Amendment does not require officers to use the best technique available as long as their method is reasonable under the circumstances." *Dickerson v. McClellan*, 101 F.3d 1151, 1160 (6th Cir. 1996), citing *Collins v. Nagle*, 892 F.2d 489, 493 (6th Cir.1989). More importantly for purposes of the present motion, it was not McCabe or Masserang who grabbed Plaintiff by the hair.

As to Plaintiff's claim of failure to intervene, the entire hair-grabbing incident occurred over a period of seconds. In *White v. Bell*, 656 F. App'x 745, 749 (6th Cir. 2016), the Sixth Circuit stated:

---

[8] In addition, Plaintiff has not presented evidence to support a claim that he suffered injuries as the result of anything that happened while he was in the general booking area. "An inmate who complains of a push or shove that causes no discernible injury almost certainly fails to state a valid excessive force claim." *Wilkins v. Gaddy*, 559 U.S. 34, 38 (2010).

"Merely being in the presence of an officer who suddenly shoves someone is not the same as standing by idly while a group of officers surrounds and beats someone. '[T]he Sixth Circuit has found no duty to intervene where, as here, an entire incident unfolds in a matter of seconds.' *Murray–Ruhl v. Passinault*, 246 Fed.Appx. 338, 348 (6th Cir. 2007) (internal quotation marks omitted) (quoting *Ontha v. Rutherford County*, 222 Fed.Appx. 498, 506 (6th Cir. 2007))."

## Act III

The file labelled "Jail-Holding Cell" depicts the officer in the baseball cap guiding the Plaintiff to the holding cell, pulling him along by the hair, at 2:56:28. The entire interaction between the two lasts 36 seconds on the video, from 2:56:28 to 2:57:04. The officer is seen taking Plaintiff into the cell and pushing him forcefully toward the wall. It appears that Plaintiff hits his head on the wall. There is no further physical contact, but the Plaintiff turns toward the officer, and they appear to engage in conversation until the officer closes the cell door at 2:57:04.

For purposes of McCabe and Masserang's motion for summary judgment it is not necessary to assess the reasonableness of pushing Plaintiff toward the wall, because neither Defendant is present. "Each defendant's liability must be assessed individually based on his own actions." *Binay v. Bettendorf*, 609 F.3d 640, 650 (6th Cir. 2010). Nor did either McCabe or Masserang have any supervisory authority over jail personnel, including the officer in the baseball cap. *Id.*

-29-

## Act IV

The final video is labelled "Jail-Printing-Mug."  There are two jail officers in the

room, both wearing caps.  The other three people that were arrested with the Plaintiff are

fingerprinted, and at 3:14:23, Plaintiff enters the room.  He stands on the mark at 3:14:36

and his photograph is taken.  From 3:17:20 to 3:18:07 Plaintiff engages in an animated

conversation with the officer who is seated at a desk, eating an apple.  At 3:18:34, the

officer with the apple leaves the room, and is standing just outside the door, while the

other officer continues to fingerprint the Plaintiff, who continues to gesture toward the

officer outside the room.  The other officer appears to have difficulty taking the

Plaintiff's fingerprints, and there appears to be some conversation between the two.  From

3:20:03 to 3:20:20, the officer who is taking the prints grabs Plaintiff by the neck, pushes

him against the wall, and pulls him back to the fingerprint area, still holding him by the

neck.  The officer who is outside the door continues eating his apple.  At 3:20:22, the

fingerprint officer is holding Plaintiff by his right wrist, and they continue talking and

gesturing. At 3:20:36, the officer forcefully pushes Plaintiff against the wall. Plaintiff

puts his hands up, and the officer holds him by his hands. He takes Plaintiff back to the

fingerprinting area. While they are by the wall, the officer who had been eating the apple

approaches them.  These events occur from 3:20:36 to 3:20:59.

-30-

Neither McCabe nor Masserang are present during this entire chain of events. Therefore, whether or not the fingerprint officer used excessive force, these Defendants cannot be held liable.

### B.    Assault and Battery (Count IV)

The common law tort of assault requires a showing of an "intentional unlawful offer of corporal injury to another person by force, or force unlawfully directed toward the person of another, under circumstances which create a well-founded apprehension of imminent contact, coupled with the apparent present ability to accomplish the contact." *Espinoza v. Thomas*, 189 Mich.App. 110, 119, 472 N.W.2d 16 (1991), citing *Tinkler v. Richter*, 295 Mich. 396, 401, 295 N.W. 201 (1940).  The tort of battery denotes a "wilful and harmful or offensive touching of another person which results from an act intended to cause such a contact."  *Id.*  However, the Court in *VanVorous v. Burmeister*, 262 Mich.App. 467, 483, 687 N.W.2d 132 (2004), noted that "government actors may find it necessary–and are permitted–to act in ways that would, under different circumstances, subject them to liability for an intentional tort.  To find for plaintiff on these [assault and battery] claims, our courts would have to determine that the officers' actions were not justified because they were not objectively reasonable under the circumstances."  *See also Brewer v. Perrin*, 132 Mich.App. 520, 528, 349 N.W.2d 198 (1984) ("governmental actions which would normally constitute intentional torts are protected by governmental immunity if those actions are justified").

-31-

As discussed above, the actions of the arresting officers were objectively reasonable, and, for the reasons stated in *VanVorous* and *Brewer*, are not actionable under a state law assault and battery theory.  Further, the Defendants are entitled to immunity under state law. *See* M.C.L. 691.1407.  Defendants are therefore entitled to summary judgment on the assault and battery claim.

### C.  Intentional Infliction of Emotional Distress (Count V)

To establish a Michigan common law claim of intentional infliction of emotional distress ("IIED"), a plaintiff must show "(1) extreme and outrageous conduct, (2) intent or recklessness, (3) causation, and (4) severe emotional distress." *Graham v. Ford*, 237 Mich.App. 670, 674, 604 N.W.2d 713 (1999).  *See also Roberts v. Auto-Owners Insurance Co.*, 422 Mich. 594, 374 N.W.2d 905 (1985).  Liability under this theory requires that the conduct complained of "has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized community." *Graham*, 237 Mich.App. at 674.  This is a demanding standard:  It is not sufficient to show that the defendant acted tortiously, intentionally, or even criminally.  *Id.* The test has been described as whether "the recitation of the facts to an average member of the community would arouse his resentment against the actor, and lead him to exclaim, 'Outrageous!'" *Roberts*, 422 Mich. at 603.

Actions that are reasonable under the Fourth Amendment cannot be considered "outrageous" under the demanding standard for IIED claims. Defendants are entitled to summary judgment on this claim.

### D. Eighth Amendment (Count VII)

*Connor v. Graham* teaches that "[t]he validity of [a] claim must then be judged by reference to the specific constitutional standard which governs that right...." *Id*. 490 U.S. at 394. The Eighth Amendment applies to an excessive force claim brought by a convicted prisoner. *Whitley v. Albers*, 475 U.S. 312, 318–326 (1986). As discussed above, an excessive force claim brought by a person who has been arrested but who has not appeared before a judge is governed by the Fourth Amendment. *Aldini v. Johnson*. Plaintiff's Eighth Amendment claim must be dismissed.

### IV. CONCLUSION

For these reasons, I recommend that Defendants' Motion for Summary Judgment [ECF No. 49] be GRANTED, and that Defendants McCabe and Masserang be DISMISSED WITH PREJUDICE.[9]

Any objections to this Report and Recommendation must be filed within fourteen

---

[9] Because these Defendants are entitled to summary judgment, it is not necessary to consider their alternative arguments for dismissal under Fed.R.Civ.P. 41(b)(failure to prosecute) or Fed.R.Civ.P. 37(b)(2)(failure to comply with discovery order).

(14) days of service of a copy hereof as provided for in 28 U.S.C. §636(b)(1) and E.D.

Mich. LR 72.1(d)(2).  Failure to file specific objections constitutes a waiver of any further

right of appeal.  *Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985);

*Howard v. Secretary of HHS,* 932 F.2d 505 (6th Cir.  1991); *United States v. Walters,* 638

F.2d 947 (6th Cir.  1981).  Filing of objections which raise some issues but fail to raise

others with specificity will not preserve all the objections a party might have to this

Report and Recommendation.  *Willis v. Sullivan,* 931 F.2d 390, 401 (6th Cir.  1991); *Smith*

*v. Detroit Fed'n of Teachers Local 231,* 829 F.2d 1370, 1373 (6th Cir.  1987).

Within fourteen (14) days of service of any objecting party's timely filed

objections, the opposing party may file a response.  The response shall be not more than

twenty (20) pages in length unless by motion and order such page limit is extended by the

court.  The response shall address specifically, and in the same order raised, each issue

contained within the objections.

Dated: January 21, 2020                    s/R. Steven Whalen
                                           R. STEVEN WHALEN
                                           UNITED STATES MAGISTRATE JUDGE

## CERTIFICATE OF SERVICE

I hereby certify on January 21, 2020 that I electronically filed the foregoing paper with the Clerk of the Court sending notification of such filing to all counsel registered electronically.  I hereby certify that a copy of this paper was mailed to the following non-registered ECF participants January 21, 2020.


s/Carolyn M. Ciesla
Case Manager for the
Honorable R. Steven Whalen